IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT and MARCY O'CONNOR,           §
                                     §
         Plaintiffs,                 §
                                     §
V.                                   §        No. 3:25-cv-3484-N-BN
                                     §
GARY LADRIDO, DCB SPORTS LLC,        §
and RENEWABLE ADVISORS LLC,          §
                                     §
         Defendants.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Senior United States District Judge David C. Godbey referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) [Dkt. No. 17] after granting the motion by Cherry Johnson Siegmund James, PC to withdraw as counsel for Defendants Gary LaDrido ("LaDrido"), DCB Sports LLC ("DCB"), and Renewable Advisors LLC ("Renewable Advisors") [Dkt. No. 16]. (A fourth defendant, Susan LaDrido, has not appeared. *Cf.* Dkt. No. 11 (summons as to her issued after post-removal filing of an amended complaint [Dkt. No. 8]).)

Both DCB and Renewable Advisors are alleged to be California limited liability companies based on the citizenship of LaDrido, the sole member of each LLC. *See* Dkt. No. 1, ¶¶ 8-10; *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990); *Storey Mountain, L.L.C. v. JPMorgan Chase Bank, N.A.*, 159 F.4th 294, 296 (5th Cir. 2025) (published order).

And, after this lawsuit was referred to the undersigned, the Court ordered DCB and Renewable Advisors to each retain new counsel and direct that counsel to enter

an appearance on the record by March 27, 2026. *See* Dkt. No. 18.

The Court then entered an order [Dkt. No. 19] as to Plaintiffs Robert and Marcy O'Connor's preliminary injunction application included in their operative (amended complaint) [Dkt. No. 8]

> requesting that the Court freeze funds they allege to be in Defendants' possession and transfer those funds to Plaintiffs or, in the alternative, transfer those funds to Plaintiffs to hold in trust or deposit those funds into the Court's registry until resolution of this lawsuit. *See id.* at 33-39; Dkt. No. 9. They also seek expedited discovery related to these requests, but Plaintiffs have neither alleged nor provided evidence of a lien or equitable interest in the funds. *See generally id.*

Dkt. No. 19 at 2.

> And the Court explained that, since

> LaDrido may proceed *pro se* as an individual defendant, … he is ordered to file a written response to the preliminary injunction application by March 6, 2026 – also the deadline that Judge Godbey ordered for responses to the first amended complaint (14 days from the date he ruled on the motion to withdraw, which was February 20, 2026). *See* Dkt. No. 14.
> The Clerk is requested to serve a copy of this order on LaDrido at his email address provided in the motion to withdraw: [gary@dcbsportsllc.com](mailto:gary@dcbsportsllc.com). *See* Dkt. No. 10 at 1.
> And the O'Connors may file a reply brief by March 9, 2026.

*Id.* at 2-3 (cleaned up).

All these deadlines passed without a response to the amended complaint, LaDrido responding to the preliminary injunction application, as ordered, and DCB and Renewable Advisors entering notices of appearance by counsel.

As a result, the Court authorized Plaintiffs' request for expedited discovery related to their preliminary injunction application. *See O'Connor v. LaDrido*, No. 3:25-cv-3484-N-BN, 2026 WL 913128 (N.D. Tex. Apr. 2, 2026) [Dkt. No. 20].

The undersigned also recommended that the Court order that DCB and Renewable Advisors are in default, direct the Clerk to enter default, and allow Plaintiffs to move for default judgment for each LLC's failure to appear by and through counsel, as ordered. *See* Dkt. No. 21.

And Plaintiffs have notified the Court that, although Defendants failed to respond to their court-authorized discovery, *see* Dkt. No. 22, they are identifying a financial account applicable to their request for a preliminary injunction, *see* Dkt. Nos. 23 & 24 (filed under seal considering the identified financial information); *see also O'Connor*, 2026 WL 913128, at *2 (noting that the lack of such an identified account prevented granting the requested preliminary injunctive relief).

And the undersigned now recommends that the Court grant the preliminary injunction application for the reasons and to the extent set out below.

### Applicable Background

As the O'Connors begin the operative complaint, filed January 16, 2026,

[o]n May 31, 2025, Defendant Gary Ladrido called Plaintiffs Robert and Marcy O'Connor, a local married couple with a family, and asked if they wanted to invest in a women's football club (AS Monaco Football Feminin "ASMFF"). The O'Connors trusted Mr. Ladrido, who was their close family friend for approximately thirty years. The O'Connors said they were interested, and Mr. Ladrido sent information about the investment on June 1, 2025. The O'Connors reviewed the materials and were asked to send funds for the investment on June 18, 2025, which they did, sending $575,804.68 to DCB Sports LLC's account via Mr. Ladrido's directions. The O'Connors sent the investment funds based on their full faith and trust in Mr. Ladrido and the statements and information that he provided to them. Indeed, they sent the funds prior to receiving or signing a formal partnership agreement or contract. However, a signed written agreement was the intention of the parties (though none was ever approved or executed).

Dkt. No. 8, ¶ 2.

According to the O'Connors, "[t]o date, Defendants have not returned any of Plaintiffs' money or disclosed where the money is or if it still exists under Defendants' control," and, so, they have "lost all faith in Defendants as Defendants have failed to return their money," forcing them "to retain counsel and file this suit in order to protect their rights and get their money back." *Id.*, ¶¶ 5 & 6.

**Discussion**

The starting point for the preliminary injunction that the O'Connors seek – to freeze Defendants' assets prior to judgment – is that their complaint seeks equitable relief.

For example, it includes a claim for money had and received. *See* Dkt. No. 8 at 20; *In re 2920 ER, L.L.C.*, 607 F. App'x 349, 347 (5th Cir. 2015) (per curiam) (A "money-had-and-received claim … 'is an equitable doctrine applied to prevent unjust enrichment' under Texas law." (quoting *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004))); *accord London v. London*, 192 S.W.3d 6, 13 (Tex. App. 2005, pet. denied).

In this context, an equitable claim is generally required because, "in an action for money damages, a United States District Court does not have the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Rock Island Auction Co. v. Dean*, No. 3:23-cv-2642-S-BN, 2023 WL 9503455, at *9 (N.D. Tex. Dec. 6, 2023) (cleaned up; quoting *Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012) (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999))).

As the United States Court of Appeals for the Fifth Circuit has explained,

> in *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289-91 (1940), the [United States Supreme] Court held that a district court had sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity. The Court concluded that where a legal action is inadequate and an asset freeze is narrowly drawn to sequester only those funds necessary to satisfy the potential judgment, "'[i]t is well settled that the granting of a temporary injunction ... is within the sound discretion of the trial court.'" *Id.* at 290 (quoting *Prendergast v. N.Y. Tel. Co.*, 262 U.S. 43, 50, 43 (1923)); *see also United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) (stating that defendants might dissipate their assets if the district court could not freeze their bank accounts).

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 708-09 (5th Cir. 2007)

(per curiam). And, in

> *Grupo Mexicano*, the Supreme Court explicitly distinguished *Deckert*. *See* 527 U.S. at 324-25 (stating that *Deckert* was not on point because the underlying cause of action there was for equitable relief). It also noted that "[t]he preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt." *Id.* at 325. Until the Court instructs us otherwise, we must continue to follow *Deckert*. *See Medellin v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004).

*Id.* at 709.

But the O'Connors still must meet all requirements for a preliminary injunction as set out in Federal Rule of Civil Procedure 65. *See 2920 ER*, 607 F. App'x at 355 ("Federal law authorizes the prejudgment freezing of Petitioners assets only if the relief requested was traditionally exercised by courts of equity and then only if the district court follows the procedural requirements for a preliminary injunction under Rule 65." (cleaned up)).

To obtain preliminary injunctive relief, then, Plaintiffs must unequivocally "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial

threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (cleaned up); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

And the Fifth Circuit "has repeatedly cautioned that [such relief] should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (cleaned up).

The Court should first find that Rule 65's notice requirements are met here considering the background set out above and where the amended complaint and motion for preliminary injunction were filed on January 16, *see* Dkt. Nos. 8 & 9, after Defendants had appeared in this lawsuit and removed it to federal court and before the Court allowed their counsel to withdraw, *see Broadspire Servs., Inc. v. Wells*, No. 1:22-CV-163-H, 2022 WL 18635653, at *3 (N.D. Tex. Dec. 1, 2022) ("Under Federal Rule of Civil Procedure 65(a)(1), the '[C]ourt may issue a preliminary injunction only on notice to the adverse party.' FED. R. CIV. P. 65(a)(1). '[T]he requirements of a fair hearing include notice of the claims of the opposing party and an opportunity to meet them.' *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org.*, 446 F.2d 353, 356 (5th Cir. 1971).").

The Court should also find that all four requirements for a PI are met here.

As to these requirements, Plaintiffs have first demonstrated a substantial likelihood of success on at least their money-had-and-received claim.

"To demonstrate a substantial likelihood of success on the merits, [movants] "must present a prima facie case but need not show that [they are] certain to win." *Id.* at \*4 (quoting *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011)).

This determination is made under "the standards provided by the substantive law." *Id.* (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

And the Court need only address the substantial likelihood of one claim if "all of the requested injunctive relief may be granted relative to [that] claim." *Id.* at \*5 (citations omitted).

The O'Connors' allegations set out a prima facie case of money had and received, a claim that "is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another." *London*, 192 S.W.3d at 13 (citing *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997, no writ)).

And, so, "[t]he question in an action for money had and received is to which party does the money, in equity and law, belong." *Id.* (citing *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951)).

And, because "[a]ll plaintiff need show is that defendant holds money which in equity and good conscience belongs to him," *Staats*, 243 S.W.2d at 687 (cleaned up), courts "have wide latitude in considering a claim for money had and received," *Janvey v. Alguire*, 846 F. Supp. 2d 662, 674 n.10 (N.D. Tex. 2011) (citing *Staats*, 243 S.W.2d

at 687-88 ("[A] cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which ... belongs to the plaintiff.'" (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402-03 (1934))).

Under these standards, Plaintiffs' factual allegations support a plausible cause of action for money had and received, *see generally* Dkt. No. 8, particularly where Plaintiffs allege that, after they reconfirmed with LaDrido that they were no longer interested in pursuing the investment, LaDrido acknowledged Plaintiffs' desire and represented that he was working to return their money and "make [them] whole," *see, e.g., id.*, ¶¶ 70-75.

As alleged, LaDrido never did:

> On November 10, 2025, Robert O'Connor texts Gary Ladrido asking if they are still on target for the return of Plaintiffs' money on November 14, 2025.
> On November 10, 2025, Gary Ladrido responds and texts Robert O'Connor confirming Plaintiffs' money will be returned by November 14, 2025, by responding "Yeah man. Gotcha."
> On November 13, 2025 Robert O'Connor texts Gary Ladrido asking if "we all good w/the investment return" scheduled for tomorrow, that is, November 14, 2025?
> On November 13, 2025, Gary Ladrido responds and texts Robert O'Connor, letting him know that Gary Ladrido isn't going to return Plaintiffs' funds as promised and admitting that he really f------ up, writing "I promised the 14th"; "I really fucked up"; "Imma move it, I'm in the middle of a trade but standby."
> On November 14, 2025, Robert O'Connor texts Gary Ladrido, asking when Plaintiffs' money will be returned as promised and asking to share screen shots and confirmation numbers of the investment's return.
> On November 14, 2025, Gary Ladrido texts Marcy O'Connor and shares a "Promissory Note" regarding the return of Plaintiffs' funds with

a request for one additional week until full return of Plaintiffs' funds is made. The Promissory Note promised to pay Plaintiffs 7% interest back to the Plaintiffs starting on the date of the transfer of the funds, June 18, 2025, and stated that any prior agreements were null and void. The maturity date of the Promissory Note was November 21, 202[5], one week from the day Gary Ladrido sent the note to Plaintiffs....

On November 14, 2025, Gary Ladrido texts Robert O'Connor and promises that he's "thousand percent confident" that he'll return the funds on November 21, 2025.

On November 20, 2025, Robert O'Connor texts Gary Ladrido and asks if "we are still thousand percent" about the investment return on November 21, 2025.

On November 20, 2025, Gary Ladrido texts Robert O'Connor and shares that he's closing a deal and working with Crux Football potentially as another investor, stating that he sent $150k to Andre Pierre Couffet and legal fees so he's going to be short.

On November 20, 2025, Robert O'Connor texts Gary Ladrido and states that Plaintiffs need their full investment back with no exotic payment plans (e.g. warrants, stock options, promissory notes, etc.).

On November 20, 2025, Gary Ladrido texts Robert O'Connor and responds that repayment is not going to happen this week but will be made the following week.

On November 20, 2025, Robert O'Connor texts Gary Ladrido stating that if funds aren't returned by November 21, 2025, a lawsuit is going to follow.

*E.g.*, Dkt. No. 8, ¶¶ 81-92 (cleaned up).

There is also a substantial likelihood that the O'Connors will suffer irreparable

harm without a preliminary injunction.

Harm is irreparable where there is no adequate remedy at law, such as monetary damages. But the mere fact that economic damages may be available does not always mean that a remedy at law is adequate. If the movant shows that there are extraordinary circumstances – such as evidence showing that the defendant is likely to become insolvent before final judgment or that the defendant intends to dissipate his assets to make a judgment awarding damages uncollectible – then a court may find the harm irreparable. Such a showing requires more than unsubstantiated allegations of injury but actual evidence that the movant would be unable to collect a money judgment apart from injunctive relief.

*Broadspire*, 2022 WL 18635653, at *5 (cleaned up).

Many of the text messages from LaDrido set out above are presented through a declaration from Robert O'Connor. *See* Dkt. No. 8-1, Ex. A.

Considering this evidence and Plaintiffs' notice of Defendants' failure to comply with the court-sanctioned expedited discovery, intended to allow Plaintiffs further evidence to support a preliminary injunction, *compare* Dkt. No. 20, *with* Dkt. No. 22, evidence in the record "establishes an immediate need for injunctive relief to preserve [Plaintiffs'] actual chance of recovery," *Broadspire*, 2022 WL 18635653, at *6 (citing *Sanzone Brokerage, Inc. v. J & M Produce Sales, Inc.*, 547 F. Supp. 2d 599, 602-03 (N.D. Tex. 2008) (finding the content of an affidavit to be sufficient evidence that "assets [we]re being dissipated ... and w[ould] continue to be dissipated unless [the defendant] [wa]s enjoined")).

The balance of hardships and the effect on the public interest also favor granting a preliminary injunction.

The Court may reasonably infer from the allegations and evidence presented by Plaintiffs – and by Defendants' failure to respond to Plaintiffs and failure to defend this lawsuit – that any harm that Defendants may suffer because of the injunctive relief is insufficient to outweigh the harm suffered by Plaintiffs absent injunctive relief. *See, e.g., Tujague v. Adkins*, No. 4:18-CV-631, 2018 WL 4816094, at *3 (E.D. Tex. Oct. 4, 2018) ("[B]ecause [the defendant] did not appear at the evidentiary hearing to respond to [the plaintiff's] request for a TRO or a preliminary injunction, there is no evidence that would allow the Court to conclude that this factor weighs in [the defendant's] favor.").

And the Court should find that the issuance of an injunction as set out below will not adversely affect the public interest where the public is not well-served by actions such as those by LaDrido set out above as plausibly pleaded and supported by evidence.

And, because a preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," FED. R. CIV. P. 65(c), and, so, "[t]he amount of security required is a matter for the discretion of the trial court," which may "may elect to require no security at all," *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978) (citations omitted)), the Court should require that Plaintiffs post a bond of $20,000 to ensure that Defendants are "compensated for any potential costs or damages if [they are] wrongfully restrained," *Broadspire*, 2022 WL 18635653, at *7 (requiring a $10,000 bond where the amount at issue was approximately half of the amount at stake here).

And, so – because Plaintiffs have satisfied the notice requirement of Rule 65(a)(1) and meet the requirements for the Court to grant a preliminary injunction – if that bond is posted (or if the Court elects to change the recommended amount or not require a bond), the Court should order Defendants to cease spending any funds that Plaintiffs provided to them that are the subject of this litigation and order that the financial institution identified by the O'Connors freeze the identified account, *see* Dkt. Nos. 23 & 24, and transfer any funds in that account up to but not greater than

$575,804.68 to the registry of this Court, *cf. Broadspire*, 2022 WL 18635653, at *7.

## Recommendation

The Court should grant Plaintiffs Robert and Marcy O'Connor's preliminary injunction application, *see* Dkt. Nos. 8 & 9, to the extent that the Court should order Plaintiffs to post a bond of $20,000 and, after they do so, order Defendants Gary LaDrido, DCB Sports LLC, and Renewable Advisors LLC to cease spending any funds that Plaintiffs provided to them that are the subject of this litigation and order that the identified financial institution freeze the identified account, *see* Dkt. Nos. 23 & 24, and transfer any funds in that account up to but not greater than $575,804.68 to the registry of this Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 6, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE